IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                                   CR No. 01-1305 MV

SANTOS IGLESIAS HERNANDEZ,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's oral Motion for Judgment of Acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure and Defendant's Motion for New Trial **[Doc. No. 55]**. The Court, having considered the motion, relevant law and being otherwise fully informed, finds that the Motion for Judgment of Acquittal is well taken and will be **GRANTED**. The Motion for New Trial **[Doc. No. 55]** will be **GRANTED in part** conditionally if the judgment of acquittal is vacated or reversed.

## BACKGROUND

Defendant has been charged by indictment with two counts of transporting an illegal alien in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). This matter went to trial for one day on January 16, 2002, and the jury returned a guilty verdict on January 17, 2002. After the government rested its case-in-chief, Defendant orally moved for a judgment of acquittal, which the Court denied.

Defendant then testified on his own behalf and made another oral motion for a judgment of acquittal after he rested his case, which the Court took under advisement. After the jury returned a guilty verdict on January 17, 2002, Defendant again orally moved for a judgment of acquittal notwithstanding the verdict, which the Court also took under advisement, and a motion for dismissal of the indictment, which the Court denied. Defendant subsequently filed a Motion for New Trial **[Doc. No. 55]** on January 24, 2002.

## STANDARDS

In reviewing a motion for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, the Court must determine whether "viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty of the crime beyond a reasonable doubt." United States v. Vallo, 238 F.3d 1242, 1247 (10th Cir. 2001) (quotation omitted). "The jury, as fact finder, has discretion to resolve all conflicting testimony, weigh the evidence, and draw inferences from the basic facts to the ultimate facts." United States v. Valdez-Gallegos, 162 F.3d 1256, 1262 (10th Cir. 1998) (citation omitted). However, the "evidence supporting the conviction must be substantial and do more than raise a suspicion of guilt," and a "conviction must not be obtained simply 'by piling inference upon inference.'" Id. Because the Court denied Defendant's motion for a judgment of acquittal at the close of the government's case, the Court "may consider the entire record in ruling on a renewed motion for acquittal at the close of all the evidence." Vallo, 238 F.3d at 1248 (citing United States v. Lazcano-Villalobos, 175 F.3d 838 (10th Cir. 1999)).

A motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure

requires a less stringent standard. "When considering a motion for a new trial under Federal Rule of Criminal Procedure 33 [sic] a trial judge considers the credibility of witnesses and weighs the evidence as a thirteenth juror. He does not view the evidence in the light most favorable to the government as he would in ruling on a Rule 29 acquittal motion." United States v. Lopez, 576 F.2d 840, 845 n.1 (10th Cir. 1978).

# DISCUSSION

## I.  Motion for Judgment of Acquittal

Defendant was charged with violating 8 U.S.C. § 1324(a)(1)(A)(ii), which prohibits in pertinent part:

> Any person who . . . knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves . . . such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law.

In order to convict Defendant for this offense, the government must prove the following elements beyond a reasonable doubt: "(1) the transporting or moving of an alien with the United States, (2) that the alien was present in violation of law, (3) that the defendant was aware of the alien's status, and (4) that the defendant acted willfully in furtherance of the alien's violation of the law." United States v. Barajas-Chavez, 162 F.3d 1285, 1287 (10th Cir. 1999) (quoting United States v. Diaz, 936 F.2d 786, 788 (5th Cir. 1991)). Upon review of the record in the light most favorable to the government, the Court finds that a rational juror could have found the first three elements of the offense to have been proven beyond a reasonable doubt. However, the Court finds that the government did not sufficiently prove "that the defendant acted willfully in furtherance of the

alien's violation of the law."

In reviewing this element of the offense, the Tenth Circuit has held that:

> [T]he element is sufficiently broad to encompass any person who acts, regardless of profit motive or close relationship, with knowledge or with reckless disregard of the fact that the person transported is an illegal alien and that transportation or movement of the alien will help, advance, or promote the alien's illegal entry or continued illegal presence in the United States. . . . [A] factfinder may consider any and all relevant evidence bearing on the "in furtherance" element (time, place, distance, reason for trip, overall impact of trip, defendant's role in organizing and/or carrying out the trip).

Barajas-Chavez, 162 F.3d at 1288–89 (footnote omitted). Although it is not limited "solely to those who support the presence of illegal aliens in this country through a smuggling operation or some other form of illicit transportation," this element "does not encompass persons who come into daily contact with undocumented aliens and who, with no evil or criminal intent, intermingle with [illegal aliens] socially or otherwise." Id. at 1288 (citation omitted). Moreover, "mere transportation of an illegal alien is, without more, insufficient as a matter of law to support a conviction under this statute." United States v. Chavez-Palacios, 30 F.3d 1290, 1294 (10th Cir. 1994).

In its case-in-chief, the government presented testimony regarding Defendant's suspicious behavior at the border checkpoint, his inconsistent statements about his travel plans, his employer's inability to contact him during the time of the offense, and the sixteen people found in the sleeping compartment of Defendant's tractor trailer—all but one of whom were undocumented. Yet, none of this evidence satisfies the government's burden to prove the "in furtherance" element. All that the government has proven is that the circumstances surrounding Defendant's stop at the border checkpoint may give rise to knowledge or reckless disregard of the

passengers' unlawful status. Nothing, however, indicates that Defendant acted with the intent to further the passengers' unlawful presence in the United States. The fact that Defendant could not be contacted and that his log books did not reflect his travel plans may be <u>suspicious</u>, but it does not constitute the <u>substantial evidence</u> necessary to survive a motion for judgment of acquittal.

As the Tenth Circuit has held, "mere transportation" of undocumented immigrants cannot support a conviction of this offense. <u>See</u> <u>Chavez-Palacios</u>, 30 F.3d at 1294. In order for the "in furtherance" clause of the statute to have any meaning, there must be evidence that the transportation "will help, advance, or promote the alien's illegal entry or continued illegal presence in the United States," <u>Barajas-Chavez</u>, 162 F.3d at 1288, in ways other than the mere transportation of the undocumented immigrants. If Congress had intended to hold persons strictly liable solely for transporting undocumented immigrants with the knowledge or reckless disregard of their unlawful status, then it would have been unnecessary to add the "in furtherance" element.

In this case, the government did not present any evidence that Defendant helped, advanced, or promoted the undocumented immigrants' unlawful entry or presence in this country other than the actual transportation itself. For example, unlike <u>Barajas-Chavez</u>, 162 F.3d 1285, there is no evidence that Defendant transported the passengers to Albuquerque to obtain employment. <u>See also</u> <u>Chavez-Palacios</u>, 30 F.3d at 1294 (government met burden of proving "in furtherance" element on motion for judgment of acquittal where defendant drove passengers to Denver to find work).[1] In fact, the only passenger to testify at the trial, Efren Cruz-Segoviano, stated that he wanted to go to Dallas, not Albuquerque. (R. at 122.) Even though Agent Dan

---

[1]There was also no evidence that Defendant helped the passengers to clandestinely walk around the border checkpoint or that he was paid by them for the transportation, as was the case in <u>United States v. Uresti-Hernandez</u>, 968 F.2d 1042, 1045 (10th Cir. 1992).

Carroll testified that Albuquerque was a hub for illegal smuggling of immigrants (R. at 196–97), there was no evidence that Mr. Cruz-Segoviano went to Albuquerque en route to Dallas. Indeed, there is no evidence that Defendant ever saw Mr. Cruz-Segoviano or conversed with him at all, let alone acted willfully to further his illegal presence in the United States. Moreover, Agent Carroll himself conceded that he would probably not go to Dallas from El Paso through Albuquerque. (R. at 197.) The Court holds that the government did not meet its burden of proving the "in furtherance" element and must, therefore, grant Defendant's motion for judgment of acquittal.

## II.     Motion for New Trial

According to Rule 29(d) of the Federal Rules of Criminal Procedure, "[i]f a motion for judgment of acquittal after verdict of guilty . . . is granted, the court shall also determine whether any motion for a new trial should be granted if the judgment of acquittal is thereafter vacated or reversed, specifying the grounds for such determination." Defendant moves the Court for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure based on two grounds: (1) the government's improper reference during its closing arguments to what was said or not said by the other undocumented immigrants who did not testify at trial; and (2) the case agent's unprofessional conduct during defense counsel's closing arguments. The Court finds the first ground, but not the second one, to be sufficiently prejudicial to Defendant to warrant a new trial. The Court will also grant a new trial because the jury's guilty verdict goes against the weight of the evidence and a new trial would be "in the interest of justice." Fed. R. Crim. P. 33.

A.  Case Agent's Unprofessional Conduct

After the Court read the jury instructions and excused the jury, it brought to the attention of both counsel that Agent Garza, the government's case agent, was making faces, rolling his eyes, and shaking his head in disbelief during defense counsel's closing arguments. (R. at 240–41.) As already stated in response to Defendant's motion to dismiss the indictment on this very same basis, the Court does not believe the prosecuting attorney was aware of Agent Garza's behavior. In denying Defendant's motion to dismiss the indictment, the Court stated that Agent Garza's "conduct was serious enough that it needed to be brought to the agent's attention, . . . [but was not] serious enough to declare a mistrial, or to dismiss the indictment . . . ." (R. at 246–47.) The Court maintains the reasoning of its prior ruling in denying Defendant's current motion for a new trial based on Agent Garza's behavior during closing arguments.

B.  Government's Improper References to Out-of-Court Statements During Closing Arguments

Outside the presence of the jury, the Court also brought to the attention of both counsel what it considered to be an improper argument by the prosecuting attorney during his oral arguments. (R. at 241.) In his defense, Defendant testified that on the night of the alleged offense, Defendant observed a man with some other women and children on the side of the road, appearing to have some sort of mechanical problems with his vehicle. Defendant stated that he agreed to drive the man's passengers to Albuquerque in order to be of assistance, but he had no suspicions about the passengers' immigration status and was not immediately aware of the total number of passengers because many of them were still in the vehicle when he first stopped to help. However, even though the government presented no evidence regarding interviews of or

statements by any of Defendant's passengers other than the one material witness, the prosecuting attorney stated in his closing remarks that "not one, not one of the 16 people even mentioned this alleged, supposed person. He never existed. He was made up by the defendant." (R. at 225.) The Court finds this remark by the prosecuting attorney to be not only improper, but also so prejudicial to Defendant to have deprived him of a fair and impartial trial.

The government is prohibited from referring to matters outside the record during its closing arguments. See United States v. Sullivan, 919 F.2d 1403, 1425 (10th Cir. 1990). When determining whether or not the government's remarks deprived the defendant of a fair trial, the Court must "consider the trial record as a whole and . . . ignore errors that are harmless, including most constitutional violations." United States v. Lowder, 5 F.3d 467, 473 (10th Cir. 1993) (quoting United States v. Hastings, 461 U.S. 499, 509 (1983)). Consequently, a conviction is invalid only when the "prosecutor's misconduct was enough to influence the jury to render a conviction on grounds beyond the admissible evidence presented." United States v. Pena, 930 F.2d 1486, 1491 (10th Cir. 1991) (citation omitted). "[T]he question of whether the improper comment has deprived defendant of a fair trial is answered by viewing the improper remark against the backdrop of the entire record before the jury." Id. (citation omitted).

In this instance, Defendant's entire case relied upon his assertion that he provided transportation to the undocumented immigrants only because he believed their vehicle had broken down on the side of the road, as stated by their driver. Thus, whether or not the jury believed this driver existed was of extreme importance in their deliberations. Of the fifteen undocumented immigrants found in Defendant's trailer, only one testified during the trial. Yet, this material witness, Efren Cruz-Segoviano, entered Defendant's vehicle without ever seeing him and was not

one of the passengers whom Defendant claimed to have picked up on the side of the road. The only contradictory portion of Mr. Cruz-Segoviano's testimony was that Defendant stopped twice rather than only once, as stated by Defendant. No other testimony by this witness or any of the government's other witnesses contradicted Defendant's claim that he picked up the passengers on the side of the road because a man told him their vehicle had mechanical difficulties.

Upon review of the entire record, the Court has no choice but to determine that the government's remarks influenced the jury to render a guilty verdict. The Tenth Circuit has recognized the U.S. Supreme Court's admonition that:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done . . . . He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. . . . It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

United States v. Gabaldon, 91 F.3d 91, 94–95 (10th Cir. 1996) (quoting Berger v. United States, 295 U.S. 78, 89 (1935)).

The Court is convinced that when the government stated in its closing arguments that none of the undocumented immigrants ever mentioned the alleged driver, the jury would have inferred that these immigrants had been interviewed and did not provide statements in support of Defendant's version of events. None of this information, however, was admitted into evidence and would have been improperly considered by the jury. In light of the fact that the government's statements went directly against the heart of Defendant's case and that considerable weight is

placed upon a prosecuting attorney's statements to the jury, the Court finds that Defendant was so prejudiced by these statements that he did not receive a fair and impartial trial.

The government claims that it established through the direct testimony of Agent Gillette that none of the undocumented immigrants mentioned the alleged driver when they were being processed; thus, the government made no error in its closing arguments. However, the government did not state to the jury that none of the undocumented immigrants voluntarily mentioned the alleged driver <u>to Agent Gillette</u>; rather, the prosecuting attorney stated that they never mentioned the alleged driver at all. Yet, Agent Gillette was not the only officer who dealt with these passengers. Indeed, Defendant himself gave his statement to Agent Carroll, not to Agent Gillette. The government simply did not provide any evidence through testimony or otherwise that any of the undocumented immigrants made any official statements contrary to Defendant's assertions, other than the number of stops made. The mere testimony of Agent Gillette that none of these immigrants <u>volunteered</u> information about the alleged driver when he was processing them, without evidence that he directly interviewed them about the circumstances of their travel, is insufficient to validate the government's improper remarks during its closing.

While it is true that defense counsel did not object to the government's closing statements at the time they were made, he has now made his objections known in his Motion for a New Trial. Thus, the government's claim that Defendant waived his right to object is entirely baseless. Rule 33 states that Defendant may file a motion for a new trial within seven days of the jury's verdict, and the court may grant such motion "if the interests of justice so require." Defendant timely filed his Motion for a New Trial within the allotted time period, and the Court believes that, because Defendant was deprived of a fair and impartial trial, the "interest of justice" requires

a new trial.

The government's argument that the Court's jury instructions cured any error from its closing remarks is likewise without merit. Although the Court instructed the jury that arguments by lawyers are not evidence, such instruction did not remedy the implication that the government's remarks regarding statements (or lack thereof) by Defendant's other passengers referred to evidence that had not been properly admitted. Thus, the jury was not instructed to take the government's remarks as arguments, not references to evidence, which tainted their deliberations.

    C. <u>Verdict is Contrary to Weight of Evidence</u>

The Tenth Circuit has held that "if after weighing the evidence and the credibility of the witnesses, the court determines that 'the verdict is contrary to the weight of the evidence such that a miscarriage of justice may have occurred,' it may grant the defendant's motion" for a new trial. <u>Gabaldon</u>, 91 F.3d at 93–94 (quoting <u>United States v. Evans</u>, 42 F.3d 586, 593 (10th Cir. 1994)). The Court, after considering the credibility of the witnesses and weighing the evidence presented at trial as a thirteenth juror, <u>see</u> <u>Lopez</u>, 576 F.2d at 845 n.1, finds that the government failed to meet its burden to prove both the "knowledge or reckless disregard" and "in furtherance" elements of the offense, thus providing an alternative basis to require a new trial in the interest of justice.

According to the Tenth Circuit, the scienter element of 8 U.S.C. § 1324(a)(1)(A)(ii) "requires that a defendant know or act in reckless disregard of the fact that an individual is an illegal alien . . . ." <u>Barajas-Chavez</u>, 162 F.3d at 1288. Consequently, Defendant must have at least been in reckless disregard of his passengers' unlawful status in order to be found guilty of

the charges. The following evidence was presented by the government in its case-in-chief to prove this element: (1) Defendant did not make eye contact during the routine questioning at the border checkpoint; (2) Defendant seemed reluctant to open the curtain that concealed the sleeping compartment upon request by the border agent; (3) Defendant parked in the darkness beyond the lighted canopy of the secondary inspection lane; (4) sixteen persons were found in Defendant's sleeping compartment—two of whom attempted to flee, and one who was found to be lawfully in the United States; (5) Defendant announced his approach to the border checkpoint; (6) Defendant's employer did not contact Defendant about pickups in Houston or Albuquerque, which Defendant claimed to be his origin and destination when questioned by border agents; (7) Defendant's log books also did not indicate pickups in either Houston or Albuquerque; and (8) the testimony of material witness Efren Cruz-Segoviano.

Upon independent review of this evidence presented at trial, the Court does not believe the government proved "reckless disregard" beyond a reasonable doubt. First of all, the Court notes that Agent Gillette could not recall the Spanish word for "curtain" during his testimony, which puts his fluency in Spanish in doubt. (R. at 105.) Thus, it was very likely that Defendant, who is a Spanish speaker and required a Spanish interpreter at trial, did not immediately understand Agent Gillette's instructions to open the curtain. The Court also notes that Defendant did ultimately open the curtain as instructed. Moreover, Agent Gillette testified that there was no sign or other markings in the secondary inspection lane to indicate where to stop. (R. at 102.) The Court believes this fact, in addition to Defendant's testimony that he needed more room to park his 70-foot tractor trailer where two patrol cars were already parked (R. at 182), sufficiently explains why he parked beyond the lighted canopy.

Regarding Defendant's inconsistent statements about his travel plans, the Court believes the evidence presented enough reasonable doubt to prevent a guilty verdict. The government's own witnesses conceded that log books are not always accurate. (R. at 156.) Considering Defendant's testimony that his travel plans changed unexpectedly, it is not a surprise that his log books were not precisely accurate on this occasion. Furthermore, the financial dispute between Defendant and his employer indicated sufficient bias to question the veracity of Mr. Francisco Javier Sanchez's testimony about Defendant's authorization to pick up merchandise in Albuquerque, at least enough to establish reasonable doubt.

Additionally, Defendant's comment that he was approaching the border checkpoint does not necessarily establish reckless disregard. It is completely normal to announce to one's passengers why the vehicle will be stopping, especially in the middle of the interstate. The Court also notes that Defendant claims to have kept the curtain to his sleeping compartment open at all times until one of the passengers closed it upon arrival at the border checkpoint. (R. at 181.) None of the government's witnesses contradicted Defendant's testimony on this issue.[2] Moreover, there was no evidence that Defendant was the person who told the passengers to run from the secondary inspection area.[3] It is also noteworthy that Defendant claimed to have openly

---

[2] Mr. Cruz-Segoviano testified that upon approaching the checkpoint, he "heard it said that we're arriving at the checkpoint, and the curtains were closed." (R. at 129.) Mr. Levitt then asked the compound question, "Do you know who said 'We're approaching the checkpoint,' and who closed the curtain?" (Id.) Mr. Cruz-Segoviano was clearly answering the first question when he answered, "I think it was the driver, because of the language." (Id.) None of Mr. Cruz-Segoviano's testimony implicated Defendant as the person who closed the curtains.

[3] Mr. Cruz-Segoviano testified, "That's what I heard, that someone said run, but I didn't see anything, because I was in the back." (R. at 130.) The witness never indicated that he recognized Defendant as the person who said "run," which is especially noteworthy given his prior testimony that, as a Cuban, Defendant had a distinguishable language or accent.

permitted his passengers to exit the vehicle at a rest area (R. at 176), which was also not contradicted by any of the government's witnesses, including the material witness. See United States v. Perez-Gomez, 638 F.2d 215, 218 (10th Cir. 1981) (noting the immigrants were transported in 28-hour journey without opportunity to eat or leave the van to prevent suspicion).

The Court also does not find the testimony of Mr. Cruz-Segoviano to support a conviction. The witness did not see or speak to Defendant when he entered the tractor trailer. Indeed, Defendant was not even present at that time. The only contradicting evidence presented in the witness' testimony was the number of stops made by Defendant before approaching the border checkpoint. However, the Court does not believe this evidence is sufficient to prove "reckless disregard" of the immigrants' unlawful status in the United States beyond a reasonable doubt.

The only remaining evidence against Defendant was his inability to make eye contact with the border agent and the fact that Defendant had 16 passengers in his vehicle. Again, the Court does not believe this evidence was sufficient to constitute "reckless disregard" beyond a reasonable doubt. Defendants in general cannot be convicted for felony charges simply because they did not make eye contact with officers. Moreover, the number of passengers and the ethnicity of the passengers should not be dispositive as to their immigration status. The Court notes that making such a finding would put bus drivers and other transportation providers at risk of criminal liability whenever they encountered a group of Hispanic passengers.

This is particularly notable given the fact that one of Defendant's passengers, a Puerto Rican, was not even illegally present in the United States. The government has not established why Defendant would have distinguished the Puerto Rican passenger from the other passengers

and how, if <u>all the passengers</u> just happened to be Puerto Rican, Defendant could still have been criminally liable. This type of situation is exactly why the statute requires that a defendant have some level of scienter with regard to the passengers' immigration status. Criminal liability cannot rise and fall upon the chance coincidence that one's passengers happen to be legal or illegal without knowledge or reckless disregard of that fact on the part of the driver.

This is not a case where Defendant directly knew of his passengers' immigration status, or where he picked them up from hotels or helped them across the border and was willfully blind of their unlawful presence. The Court notes that Defendant resides in Oregon, which does not have the illegal trafficking of undocumented immigrants as in border states like New Mexico. Furthermore, Defendant himself is a lawful immigrant from Cuba who does not speak English, so he would not necessarily have found it suspicious to encounter a group of Spanish-speaking persons. And, as a former resident of a country like Cuba, Defendant may have found it perfectly normal to offer a ride to what appeared to be a stranded family on the side of the road.

Finally, the Court has already found that the government did not sufficiently meet its burden of proving the requisite element that Defendant "acted willfully in furtherance of the alien's violation of the law" in order to survive a motion for judgment of acquittal. For the same reasons, the Court believes the guilty verdict goes against the weight of the evidence for this element as well, thus requiring a new trial in the interest of justice.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's oral Motion for Judgment of Acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure is hereby **GRANTED**.

-15-

If the Judgment of Acquittal is vacated or reversed upon appeal, Defendant's Motion for New Trial **[Doc. No. 55]** is hereby conditionally **GRANTED in part.**

Dated this 25th day of February, 2002.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT COURT JUDGE

Attorney for Plaintiff:
Peter S. Levitt
Attorney for Defendant:
Charles A. Harwood